UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA $06-80718$

Miami Division

BLUEGREEN CORPORATION,

                    Plaintiff,

v.

DAVID A. SIEGEL, DAVID A. SIEGEL
REVOCABLE TRUST, and CENTRAL
FLORIDA INVESTMENTS,

                    Defendants.

CASE NO: _____

_____/

## COMPLAINT
## JURY TRIAL DEMANDED

      Plaintiff Bluegreen Corporation ("Bluegreen"), by its attorneys, as and for its complaint herein, with knowledge as to its own acts and otherwise upon information and belief, alleges as follows:

### NATURE OF THE ACTION

      1.      Bluegreen brings this action to redress the illegal conduct of defendant David A. Siegel and entities that he controls in connection with their attempt to acquire a major stake in Bluegreen in violation of Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act") and the Florida Securities and Investor Protection Act, and to obtain a declaration that the actions taken by the Bluegreen Board of Directors in response to defendants' accumulation of Bluegreen shares are appropriate.



2.      On or about June 14, 2005, defendants began selling put options on Bluegreen common stock.  These put options entitled the buyers to sell Bluegreen shares to defendants at $12.50 per share.  Over the next thirteen months, defendants sold put options that, if and when they were exercised, would cause defendants to purchase 32.1% of Bluegreen's common shares.

3.      Over those thirteen months, however, defendants did not disclose their creeping accumulation of option positions.  Instead they waited until July 20, 2006 to reveal that, by virtue of third parties exercising the options defendants had sold, defendants had come to acquire 7.7% of Bluegreen's outstanding common shares.  Defendants further revealed in that July 20 disclosure (which they filed with the United States Securities and Exchange Commission on Schedule 13D) that additional outstanding option contracts, if exercised by the third parties who held them, would cause defendants to acquire an additional 24.4% of Bluegreen's outstanding stock.  A true and correct copy of defendants' Schedule 13 D is Exhibit 1 hereto.

4.      Defendants' campaign of accumulating option positions was part of a plan or scheme to evade the reporting requirements of Section 13(d) of the Exchange Act.  For that reason, by operation of law, defendants were deemed to be the beneficial owners of the common shares underlying the options they sold, and they were required to make public disclosures within ten days of their accumulation of put options covering 5% of Bluegreen's stock.  Defendants did not make those disclosures when they were due.  Instead they waited until the exercise of outstanding options caused their holdings of actual common shares to exceed the 5% level.  That failure to disclose their option-selling campaign had the effect of illegally concealing defendants' accumulation strategy and depriving Bluegreen shareholders of material information about defendants' plans and intentions.

5.     And when defendants did finally disclose their accumulation of shares and options in their Schedule 13D filing on July 20, they failed to disclose that the true intention of their option-selling campaign was to acquire a major stake in Bluegreen and influence Bluegreen's business.  By concealing their option-selling strategy for more than a year, and then failing to disclose their true intentions, defendants violated Section 13(d) of the Exchange Act and the regulations thereunder, as well as the Florida Securities and Investor Protection Act.

6.     Bluegreen brings this action for injunctive and declaratory relief to remedy these violations of the Exchange Act and the Florida Securities and Investor Protection Act, and to ensure that Bluegreen shareholders receive the information they need to make informed decisions with respect to their shares.

7.     Bluegreen also brings this action to obtain a declaration that the actions that the Bluegreen Board of Directors has taken in response to defendants' accumulation of shares are appropriate.  Specifically, Bluegreen seeks a declaration that the Board's decision to implement a Shareholder Rights Plan was a lawful exercise of the Board's fiduciary duties.

## PARTIES

8.     Plaintiff Bluegreen is a corporation organized and existing under the laws of Massachusetts, with its principal executive offices located at 4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.  Bluegreen is one of North America's leading providers of timeshare sales and rentals.  Bluegreen owns or operates vacation and home site properties in Florida and certain other states.  Shares of Bluegreen common stock are publicly traded on the New York Stock Exchange and are registered securities under 15 U.S.C. § 78l of the Exchange Act.  As of March 14, 2006, Bluegreen had 30,512,651 shares of common stock outstanding.

9.      Defendant David A. Siegel ("Siegel") is the sole trustee and beneficiary of defendant David A. Siegel Revocable Trust (the "Siegel Trust"), and president and sole director of defendant Central Florida Investments, Inc. ("CFI").  Siegel is also President of Westgate Resorts, which competes with Bluegreen in the timeshare industry.  Siegel maintains his principal business address at 5601 Windhover Drive, Orlando, Florida 32819, and is a citizen of Florida.  Siegel is the record owner of 323,400 shares, or approximately 1.06% of the outstanding shares of Bluegreen common stock.

10.     Defendant CFI is a Florida corporation that, through its wholly owned subsidiary Westgate Resorts, is engaged in the business of timeshare sales and rentals.  The business address of defendant CFI is 5601 Windhover Drive, Orlando, Florida 32819.  CFI is the record owner of 2,026,400 shares or approximately 6.64% of the outstanding shares of Bluegreen common stock.

11.     Defendant Siegel Trust owns all of the voting stock of defendant CFI.  The business address of defendant Siegel Trust is 5601 Windhover Drive, Orlando, Florida 32819.

12.     Together, defendants Siegel, the Siegel Trust and CFI own 2,349,800 shares, or approximately 7.7% of the outstanding shares of Bluegreen common stock, and they are parties to option contracts that, if exercised, will lead to defendants' acquisition of an additional 7,442,100 shares — an additional 24.4% of Bluegreen's common shares.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331, and has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367(b).

14.     Venue is proper in this district pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

## FACTS

**A.     Defendants unlawfully accumulate
a major stake in Bluegreen.**

15.     Defendant Siegel is President of Westgate Resorts, which competes with Bluegreen in the timeshare industry.  Siegel and Westgate have been targeting Bluegreen for a takeover for over four years now.  In or about April 2002, the Chief Financial Officer of Westgate Resorts contacted John E. Abdo, Vice Chairman of Bluegreen's Board of Directors and Vice Chairman of Levitt Corporation, to discuss a potential acquisition of Levitt's stake in Bluegreen.  (Levitt is currently Bluegreen's largest shareholder, with holdings of approximately 9.5 million shares, or roughly 31% of the Company.)  Over the next four years, defendants' representatives continued to approach Mr. Abdo about an acquisition of Levitt's stake.  The most recent such approach occurred in June 2006, only weeks before defendants first disclosed their stake in Bluegreen.  Each one of defendants' takeover overtures was rejected.

16.     His proposal to acquire Bluegreen having been rebuffed, Siegel hit upon a different plan — to accumulate by stealth a significant position in Bluegreen common stock without disclosing his true intention to acquire control of the company.  Defendants' plan constituted an illegal scheme to evade the reporting requirements of Section 13(d) and deprive Bluegreen shareholders of material information about defendants' activities, plans and intentions.

17.     Commencing on or about June 14, 2005, defendants began selling put contracts on Bluegreen common stock with varying expiration dates.  Each of the put options gives its owner an option to sell 100 shares of Bluegreen common stock to defendants at a price of

$12.50 per share.  Bluegreen has been trading at prices below $12.50 since May 8, 2006.  Many of the put options at issue were sold "in the money," giving the buyers of these options the ability to immediately require defendants to purchase Bluegreen shares at a premium to current market prices.

18.     As of July 19, 2006, defendants reported that they beneficially owned 2,349,800 shares, or approximately 7.7% of the outstanding shares of Bluegreen common stock, of which 2,318,900 shares were purchased by virtue of the exercise of put contracts.  In addition, as of July 19, 2006, defendants had obligations to purchase 7,422,100 shares, or approximately 24.4% of the outstanding shares of Bluegreen common stock, if the outstanding put options were exercised prior to their expiration dates.  Together with the shares already owned by defendants, the shares that defendants would acquire upon the exercise of the outstanding put options would amount to approximately 32.1% of the outstanding shares of Bluegreen.

19.     By entering into put contracts rather than making outright purchases of shares, defendants surreptitiously put themselves in position to acquire very quickly a controlling stake in Bluegreen.  They have done so without alerting the market generally, or Bluegreen shareholders specifically, of their activities or intentions.

**B.     Defendants evade the reporting
        requirements of Section 13(d).**

20.     Section 13(d) of the Exchange Act imposes reporting requirements upon persons who acquire beneficial ownership of more than 5% of certain issuers' equity securities.  Defendants' campaign to accumulate put option contracts constituted an illegal plan or scheme to prevent beneficial ownership of the underlying shares from vesting with defendants and to evade

the reporting requirements of Section 13(d). The scheme had the effect of denying Bluegreen shareholders of material information about defendants' activities, plans and intentions.

21.     By virtue of defendants' participation in this scheme, and by operation of Section 13(d) and Rule 13d-b(3), defendants were required to report their 5% beneficial ownership on a Schedule 13D as soon as the amount of Bluegreen stock underlying their put option positions surpassed the 5% threshold.

22.     Defendants violated this requirement. They did not disclose their ownership interest until July 20, 2006, by which time their option positions, combined with their actual shareholdings, covered 32.1% of Bluegreen's shares. It is not clear from defendants' Schedule 13D precisely when their option positions first covered more than 5% of Bluegreen's stock, but it is clear that more than 11% of the Company was subject to those options as early as May 19, 2006.

23.     As long as defendants' creeping tender offer remained undisclosed, Bluegreen's shareholders were deprived of information they needed in order to make informed investment decisions with respect to their shares, an injury for which there is no adequate remedy at law. For example, had defendants disclosed that they intended to acquire an almost one-third stake in Bluegreen — a position similar to Levitt's in size, and large enough to give defendants a *de facto* veto power over mergers or other consolidations — Bluegreen shareholders may have declined to purchase the put options that defendants were selling, or may have declined to exercise the puts that they bought.

24.     In short, defendants' concealment of their option strategy allowed them to obtain a stake in Bluegreen that otherwise may not have been available to them, and to do so on economic terms more favorable than the market might otherwise have allowed.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ■ 150 West Flagler Street ■ Miami, FL 33130 ■ 305-789-3200

C.   **Defendants' Schedule 13D was
     incomplete and misleading.**

25.     When defendants finally did disclose their campaign of selling put options on July 20, the Schedule 13D that they filed was incomplete and misleading.  Item 4 of Schedule 13D requires the acquiring persons to disclose, among other facts, any plans or proposals to make any material change in the issuer's business or corporate structure.  But defendants' Schedule 13D did not disclose that Siegel had previously proposed acquiring Levitt's stake in Bluegreen.  Nor did it disclose defendants' continuing intention to acquire a major stake in Blue-green and influence Bluegreen's business.

26.     Item 3 of Schedule 13D requires the acquiring persons to disclose "the source and the amount of funds or other consideration used or to be used in making the pur-chases."  But defendants' Schedule 13D did not identify the source of the funds that will be used to buy shares upon the exercise of the outstanding put options.

27.     Item 6 of Schedule 13D requires the acquiring persons to disclose "any contracts, arrangements, understandings or relationships (legal or otherwise) among [the acquir-ing persons] and between [the acquiring persons] and any person with respect to any securities of the issuer, including but not limited to . . . option arrangements, puts or calls, naming the persons with whom such contracts, arrangements, understandings or relationships have been entered into."  But defendants' Schedule 13D failed to name anyone with whom they have entered put option arrangements.

28.     The primary purpose of Section 13(d) of the Exchange Act is to alert the public to potential changes in corporate control and to provide the public with the opportunity to evaluate the effect of the potential change and make investment decisions based on that evalua-

tion.  By failing to disclose their intention to acquire a major stake in Bluegreen, defendants once again deprived Bluegreen shareholders of the information needed to make informed investment decisions with respect to their shares, an injury for which there is no adequate remedy at law.

**D.      Bluegreen takes steps to protect the Company.**

29.      Shortly after it became aware of the defendants Schedule 13D filing and of the possibility that defendants could imminently acquire a 32.1% stake in the company, the Board of Directors of Bluegreen, in consultation with legal and financial advisors, evaluated the acquisitions made by Siegel and his affiliates and their interests in Bluegreen.  They also considered the possibility of hostile takeover attempts generally.

30.      On July 27, 2006, after due deliberation, the Bluegreen Board authorized the adoption of the Bluegreen Shareholder Rights Plan in order to assure that all of Bluegreen's shareholders receive fair and equal treatment in the event of any proposed takeover of the Company and to guard against abusive tactics to gain control of Bluegreen without paying all shareholders a premium for that control.

31.      The Bluegreen Shareholder Rights Plan provides that if a person or group becomes a beneficial owner of 15% or more of the outstanding Bluegreen common stock, all shareholders other than such person or group have the right to purchase additional shares of Bluegreen at 50% of the then current market price, thereby diluting the interest of the person or group.  In recognition of the possibility that Siegel may surpass the 15% threshold of the Rights Plan through no further voluntary act of his own      as the put option holders have the right to force him to buy the shares subject to their options — the Bluegreen Board of Directors has provided that if defendants trigger the 15% threshold by virtue of the exercise of existing put option

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ■ 150 West Flagler Street ■ Miami, FL 33130 ■ 305-789-3200

contracts, they will be allowed 60 days to reduce their interest below the 15% level before the dilutive feature of the Rights Plan takes effect.

32.     The Massachusetts Legislature has expressly authorized Massachusetts corporations to adopt such rights plans. *See* Mass. Bus. Corp. Law, Ch. 156D, §§ 6.24 & 8.30.

## AS AND FOR A FIRST CAUSE OF ACTION
(Violations of Section 13(d) of the
Exchange Act and Rule 13d-1 thereunder)

33.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 32 thereof.

34.     Defendants' campaign to accumulate a significant stake in Bluegreen shares through secret put option arrangements constituted an illegal plan or scheme to evade the reporting requirements of Section 13(d) and deprive Bluegreen shareholders of material information about defendants' activities, plans and intentions, as required by Section 13(d).

35.     Once defendants surpassed a 5% beneficial ownership of Bluegreen shares, they were required under Section 13(d) of the Exchange Act to file a Schedule 13D with the Securities and Exchange Commission.

36.     Rule 13d-3 states that "any person who, directly or indirectly, creates or uses . . . any . . . contract, arrangement or device with the purpose or effect of . . . preventing the vesting of . . . beneficial ownership [of a security] as part of a plan or scheme to evade the reporting requirements of Section 13(d) . . . of the Act shall be deemed for purposes of such sections to be the beneficial owner of such security."

37.     Defendants' surreptitious solicitation of put option contracts with the expectation that the options would be exercised, as they in fact has been, constitutes "a plan or

scheme to evade the reporting requirements of Section 13(d)." Therefore, pursuant to Rule 13d-3, defendants are the deemed beneficial owners of the Bluegreen shares underlying those put options and they became subject to the reporting requirement of Section 13(d) when they had sold put options covering 5% of the stock. Defendants violated these requirements. By the time defendants filed their Schedule 13D on July 20, 2006, they had already accumulated 2,349,800 shares, or approximately 7.7% of the outstanding shares of Bluegreen common stock, and had entered into put option contract to purchase 7,422,100 shares, or approximately 24.4% of the outstanding shares of Bluegreen common stock.

38.    Moreover, the Schedule 13D that defendants filed was incomplete and misleading. Item 4 of Schedule 13D requires the acquiring persons to disclose, among other facts, any plans or proposals to make any major change in the issuer's business or corporate structure if the purpose of the share purchases is to acquire control of the business. But defendants' Schedule 13D did not disclose that defendants had proposed acquiring Levitt's stake in Bluegreen. Nor did it disclose defendants' continuing intention to acquire control of Bluegreen.

39.    Defendants have purchased and/or entered into put contracts with respect to Bluegreen common stock with the purpose of changing or influencing the control of Bluegreen.

40.    Defendants have filed a Schedule 13D that falsely certifies that none of the defendants "ha[d] any present plan or proposal that relates to or would result in (a) [t]he acquisition by any person of additional securities if the Issuer . . . (b) [a]n extraordinary corporate transaction, such as a merger, reorganization or liquidation . . . (d) [a]ny change in the present board of directors or management of the Issuer . . . [or] (f) [a]ny other material change in the Issuer's

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ■ 150 West Flagler Street ■ Miami, FL 33130 ■ 305-789-3200

business or corporate structure . . . ." The Schedule 13D fails to disclose defendants' true plans and purposes in acquiring shares of Bluegreen common stock.

41.     Defendants' Schedule 13D also failed to disclose "the source . . . of funds . . . to be used in making the purchases" of shares to be bought upon exercise of the outstanding put options, as required by Item 3 of Schedule 13D.

42.     Defendants have entered into put option contracts to acquire an additional 24.4% of the outstanding shares of Bluegreen common stock but have failed to name the persons with whom the put options contracts have been entered into as required by Item 6 of Schedule 13D.

43.     By reason of the foregoing, defendants have violated Section 13(d) of the Exchange Act, 15 U.S.C. §§ 78m(d), and Rule 13d-1 thereunder, 17 C.F.R. § 240.13d-1.

44.     Bluegreen has no adequate remedy at law.

### AS AND FOR A SECOND CAUSE OF ACTION
(Violations of the Florida Securities and Investor Protection Act)

45.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 32 hereof.

46.     By reason of the foregoing, in connection with the offer, sale, or purchase of investments and securities, defendants have obtained and continue to obtain property by means of the concealment of material facts.

### AS AND FOR A THIRD CAUSE OF ACTION
(Declaratory Judgment — Rights Plan)

47.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 32 hereof.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ■ 150 West Flagler Street ■ Miami, FL 33130 ■ 305-789-3200

48.     On July 27, 2006, the Bluegreen Board of Directors authorized the adoption of the Bluegreen Shareholder Rights Plan.

49.     The Rights Plan is triggered if a shareholder or a group of shareholders with an "agreement, arrangement or understanding . . . for the purpose of acquiring, holding, voting . . . or disposing of any securities of the Company" has acquired beneficial ownership of 15% or more of Bluegreen's common stock (an "Acquiring Person"). When the Rights Plan is triggered, the rights issued thereunder to each Bluegreen stockholder (other than the Acquiring Person) may acquire additional shares of Bluegreen common stock at 50% of the then current per share market price.

50.     The Bluegreen Board authorized the adoption of the Rights Plan to assure that all of Bluegreen's shareholders receive fair and equal treatment in the event of any proposed takeover of the Company and to guard against abusive tactics to gain control of Bluegreen without paying all shareholders a premium for that control.

51.     An actual and justiciable case or controversy exists between the parties as to whether the Board was justified in adopting the Rights Plan.

52.     In light of the foregoing, Bluegreen is entitled to a declaration that the Board's adoption of the Rights Plan was justified under the circumstances.

## JURY DEMAND

53.     Plaintiff demands a trial by jury for all issues triable by jury.

WHEREFORE, plaintiff demands judgment against defendants as follows:

(a)　　finding and adjudging that the defendants have violated Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), and Rule 13d-1 thereunder, 17 C.F.R. § 240.13d-1;

(b)　　finding and adjudging that the defendants have violated the Florida Securities and Investor Protection Act, Florida Statutes § 517.011 et seq.;

(c)　　ordering defendants, and each of them, to divest their shares of Bluegreen common stock purchased since their campaign of selling put options began;

(d)　　ordering defendants, and each of them, to make corrective disclosures in compliance with the Exchange Act, 15 U.S.C. § 78m(d), Rule 13d-1 thereunder, 17 C.F.R. § 240.13d-1, and the Florida Securities and Investor Protection Act;

(e)　　enjoining, preliminary and permanently, defendants, their officers, employees and agents, and all other persons acting in concert with or on behalf of them, from (i) acquiring or attempting to acquire any additional shares of Bluegreen common stock; (ii) asserting any rights with respect to Bluegreen by virtue of the ownership of such Bluegreen common stock until such divestures are completed and corrective disclosures are made, (iii) filing or disseminating any false, misleading or untimely Schedule 13D statements; (iv) exercising or attempting to exercise, directly or indirectly, any influence upon the management and Board of Bluegreen for the purpose of advancing the interests of defendants or otherwise; (v) making a tender offer for Bluegreen shares, and (vi) taking or attempting to take any other steps to attempt to acquire control of Bluegreen or influence its business or inducing others to do so;

(f)　　instituting a "cooling-off" period following any corrective disclosures by the defendants during which defendants would be enjoined from acquiring any additional shares

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

of Bluegreen common stock or asserting any rights with respect to Bluegreen by virtue of the ownership of such shares of Bluegreen common stock;

      (g)    declaring that the Bluegreen Board of Directors acted appropriately in adopting the Rights Plan to assure that all of Bluegreen's shareholders receive fair and equal treatment in the event of any proposed takeover of the company and to guard against abusive tactics to gain control of Bluegreen without paying all shareholders a premium for that control;

      (h)    awarding such damages, and the costs and disbursements of this action, as are permitted by applicable law; and

      (i)    granting Bluegreen such other and further relief as the Court deems just and proper.

Dated:  Miami, Florida
       July 27, 2006

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.

By: _____
David C. Pollack
Florida Bar Number 362932
150 West Flagler Street
Miami, Florida 33130
Tel:  (305) 789-3200
Fax:  (305) 789-3395
dpollack@swmwas.com

*Attorneys for Plaintiff Bluegreen Corporation*

# EXHIBIT 1

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
#### WASHINGTON, D.C. 20549

## SCHEDULE 13D
**Under the Securities Exchange Act of 1934**

**BLUEGREEN CORPORATION**
**(Name of Issuer)**

**Common Stock, $0.01 Par Value Per Share**
**(Title of Class of Securities)**

**096231105**
**(CUSIP Number)**

Central Florida Investments, Inc.
5601 Windhover Drive
Orlando, FL 32819
(407) 351−3350
Attn: Thomas F. Dugan

with copies to:

William F. Wynne, Jr., Esq.
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819−8316

**(Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications)**

July 10, 2006
**(Date of Event Which Requires Filing of this Statement)**

If the filing person has previously filed a statement on Schedule 13G to report the acquisition which is the subject of this Schedule 13D, and is filing this schedule because of Rule 13d−1(e), 13d−1(f) or 13d−1(g), check the following box  ☐.

**EXHIBIT**

**1**

**SCHEDULE 13D**

CUSIP No. 096231105

| 1 | NAME OF REPORTING PERSONS<br>Central Florida Investments, Inc.<br><br>I.R.S. IDENTIFICATION NOS. OF ABOVE PERSON (ENTITIES ONLY) | | |
|---|---|---|---|
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP | (a) ☒<br>(b) ☐ | |
| 3 | SEC USE ONLY | | |
| 4 | SOURCE OF FUNDS<br><br>WC | | |
| 5 | CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) or 2(e)   ☐ | | |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>Florida | | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | SOLE VOTING POWER<br><br>0 | |
| | 8 | SHARED VOTING POWER<br><br>2,349,800 | |
| | 9 | SOLE DISPOSITIVE POWER<br><br>0 | |
| | 10 | SHARED DISPOSITIVE POWER<br><br>2,349,800 | |
| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br><br>2,349,800 | | |
| 12 | CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES   ☐ | | |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br><br>7.7% | | |
| 14 | TYPE OF REPORTING PERSON<br><br>CO | | |

**SCHEDULE 13D**

CUSIP No. 096231105

| 1 | NAME OF REPORTING PERSONS<br>David A. Siegel Revocable Trust<br><br>I.R.S. IDENTIFICATION NOS. OF ABOVE PERSON (ENTITIES ONLY) | | |
|---|---|---|---|
| 2 | CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP | (a) ☒<br>(b) ☐ | |
| 3 | SEC USE ONLY | | |
| 4 | SOURCE OF FUNDS<br>WC | | |
| 5 | CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO ITEMS 2(d) or 2(e)   ☐ | | |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION<br>Florida | | |
| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | SOLE VOTING POWER<br>0 | |
| | 8 | SHARED VOTING POWER<br>2,349,800 | |
| | 9 | SOLE DISPOSITIVE POWER<br>0 | |
| | 10 | SHARED DISPOSITIVE POWER<br>2,349,800 | |
| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON<br>2,349,800 | | |
| 12 | CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES   ☐ | | |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)<br>7.7% | | |
| 14 | TYPE OF REPORTING PERSON<br>OO | | |

3

**SCHEDULE 13D**

CUSIP No. 096231105

| 1 | NAME OF REPORTING PERSONS<br>David A. Siegel<br><br>I.R.S. IDENTIFICATION NOS. OF ABOVE PERSON<br>(ENTITIES ONLY) | | |
|---|---|---|---|
| 2 | CHECK THE APPROPRIATE BOX IF A<br>MEMBER OF A GROUP | (a) ☒<br>(b) ☐ | |
| 3 | SEC USE ONLY | | |
| 4 | SOURCE OF FUNDS<br><br>PF | | |
| 5 | CHECK IF DISCLOSURE OF LEGAL<br>PROCEEDINGS IS REQUIRED PURSUANT TO<br>ITEMS 2(d) or 2(e)   ☐ | | |
| 6 | CITIZENSHIP OR PLACE OF ORGANIZATION<br><br>United States | | |
| NUMBER OF<br>SHARES<br>BENEFICIALLY<br>OWNED<br>BY EACH<br>REPORTING<br>PERSON WITH | 7 | SOLE VOTING POWER<br><br>0 | |
| | 8 | SHARED VOTING POWER<br><br>2,349,800 | |
| | 9 | SOLE DISPOSITIVE POWER<br><br>0 | |
| | 10 | SHARED DISPOSITIVE POWER<br><br>2,349,800 | |
| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED<br>BY EACH REPORTING PERSON<br><br>2,349,800 | | |
| 12 | CHECK IF THE AGGREGATE AMOUNT IN ROW<br>(11) EXCLUDES CERTAIN SHARES   ☐ | | |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT<br>IN ROW (11)<br><br>7.7% | | |
| 14 | TYPE OF REPORTING PERSON<br><br>IN | | |

4

Back to Contents

**Item 1.   Security and Issuer**

    This statement on Schedule 13D (this "Statement") relates to the common stock, $0.01 par value per share (the "Common Stock"), of Bluegreen Corporation, a Massachusetts corporation (the "Issuer"). According to the Issuer's most recent Form 10–Q filed with the U.S. Securities and Exchange Commission on May 10, 2006, the principal executive offices of the Issuer are located at 4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.

**Item 2.   Identity and Background**

    (a)  This Statement is being filed by and on behalf of: (i) Central Florida Investments, Inc. ("CFI"); (ii) the David A. Siegel Revocable Trust (the "Siegel Trust"); and (iii) David A. Siegel ("Mr. Siegel"). CFI, the Siegel Trust and Mr. Siegel are hereinafter sometimes collectively referred to as the "Reporting Persons."

    (b)  The business address of CFI is 5601 Windhover Drive, Orlando, Florida 32819. The business addresses of the Siegel Trust and Mr. Siegel are c/o Central Florida Investments, Inc., 5601 Windhover Drive, Orlando, Florida 32819.

    (c)  CFI is a Florida corporation engaged in the business of timeshare sales and rentals. Mr. Siegel is a citizen of the United States and is the President and sole director of CFI and the sole trustee and beneficiary of the Siegel Trust.

    The attached Schedule A lists the executive officers and directors of CFI, the sole trustee of the Siegel Trust and contains the following information with respect to each such person: (i) name; (ii) business address; (iii) present principal occupation or employment and the name, principal business and address of any corporation or other organization in which such employment is conducted; and (iv) citizenship.

    (d)  During the past five years, none of the Reporting Persons nor, to the best of any Reporting Person's knowledge, any person named in Schedule A to this Statement, has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors).

    (e)  During the past five years, none of the Reporting Persons nor, to the best of any Reporting Persons' knowledge, any person named in Schedule A to this Statement, was a party to a civil proceeding of a judicial or administrative body of competent jurisdiction as a result of which such person was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activity subject to, federal or state securities laws or finding any violation with respect to such laws.

    (f)  CFI is a Florida corporation. Mr. Siegel is a citizen of the United States.

**Item 3.   Source and Amount of Funds or Other Consideration**

The Reporting Persons beneficially own 2,349,800 shares of Common Stock (the "Shares"). A total of 323,400 of the Shares are owned of record by Mr. Siegel (the "Siegel Shares") and a total of 2,026,400 of the Shares are owned of record by CFI (the "CFI Shares"). A total of 2,318,900 of the Shares were purchased by virtue of the exercise of certain put contracts described below. The aggregate purchase price of the 2,349,800 Shares beneficially owned by the Reporting Persons was $29,355,889. Mr. Siegel may be deemed to beneficially own all of the Shares because he is the sole trustee of the Siegel Trust, which owns all of the voting stock of CFI. The Siegel Trust may be deemed to beneficially own all of the Shares because it owns all of the voting stock of CFI and because Mr. Siegel is the sole trustee and beneficiary of the Siegel Trust. CFI may be deemed to beneficially own all of the Shares because it is the owner of record of the CFI Shares and because it is controlled by the Siegel Trust and Mr. Siegel. CFI purchased the CFI Shares by using available working capital and Mr. Siegel purchased the Siegel Shares using personal funds.

From time to time the Reporting Persons have purchased and sold securities of the Issuer. Beginning on or about June 14, 2005, the Reporting Persons began selling put contracts in the open market with varying expiration dates (the "Puts"). Each of the Puts gives its owner an option to sell 100 shares of Common Stock to the Reporting Persons at a price of $12.50 per share. The Reporting Persons received premiums between $0.15 and $1.25 per share for selling the Puts. As of July 19, 2006, the Reporting Persons have obligations to purchase 7,442,100 shares of Common Stock at $12.50 per share, if all such Puts are exercised prior to their expiration dates. On July 22, 2006, 576 Puts will expire if not exercised. On August 19, 2006, 70,595 Puts will expire if not exercised. On November 18, 2006, 3,250 Puts will expire if not exercised.

**Item 4.   Purpose of Transaction**

The Reporting Persons sold the Puts to earn the premium customarily received for writing options and because they believed that, if such Puts were to be exercised, $12.50 per share represented an acceptable price to pay for the Common Stock. As of July 19, 2006, the Reporting Persons have obligations to purchase an additional 7,442,100 shares of Common Stock at $12.50 per share, if all the Puts are exercised prior to their expiration dates.

CFI intends to monitor the Issuer's business, trading performance, operating results, financial position and prospects. Depending on market conditions, including the trading activity with respect to the Issuer's shares, their continuing evaluation of the business and prospects of the Issuer and other factors, the Reporting Persons may in the future take such actions with respect to their investments in the Issuer as they deem appropriate including, without limitation, purchasing additional shares, selling some or all of its Shares or purchasing or selling additional option contracts.

Except as otherwise described herein or as expressly stated below, no Reporting Person, and to the best knowledge of the Reporting Persons, none of the persons set forth on Schedule A, has any present plan or proposal that relates to or would result in:

(a)   The acquisition by any person of additional securities of the Issuer, or the disposition of securities of the Issuer;

(b)   An extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the Issuer or any of its subsidiaries;

(c)   A sale or transfer of a material amount of assets of the Issuer;

(d)   Any change in the present board of directors or management of the Issuer, including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board;

(e)   Any material change in the present capitalization or dividend policy of the Issuer;

6

(f)    Any other material change in the Issuer's business or corporate structure;

(g)    Changes in the Issuer's charter, bylaws or instruments corresponding thereto or other actions which may impede the acquisition of control of the Issuer by any person;

(h)    Causing a class of securities of the Issuer to be delisted from a national securities exchange or to cease to be authorized to be quoted in an inter-dealer quotation system of a registered national securities association;

(i)    A class of equity securities of the Issuer becoming eligible for termination of registration pursuant to Section 12(g)(4) of the Securities Exchange Act of 1934, as amended; or

(j)    Any action similar to any of those enumerated above.

**Item 5.   Interest in Securities of the Issuer**

(a)-(b)   Set forth in the table below is the number and percentage of shares of Common Stock beneficially owned by each Reporting Person as of July 19, 2006.

| Name | Number of Shares Beneficially Owned with Sole Voting and Dispositive Power | Number of Shares Beneficially Owned with Shared Voting and Dispositive Power | Aggregate Number of Shares Beneficially Owned | Percentage of Class Beneficially Owned(1) |
|---|---|---|---|---|
| Reporting Persons | 0 | 2,349,800 | 2,349,800 | 7.7% |
| Central Florida Investments, Inc.(2) | 0 | 2,349,800 | 2,349,800 | 7.7% |
| David A. Siegel(3) | 0 | 2,349,800 | 2,349,800 | 7.7% |
| David A. Siegel Revocable Trust(4) | 0 | 2,349,800 | 2,349,800 | 7.7% |

(1)   The percentages of Common Stock indicated in this table are based on the 30,512,651 shares of Common Stock outstanding as of May 5, 2006, as disclosed in the Issuer's most recent Form 10-Q filed with the Securities and Exchange Commission. Any Common Stock not outstanding which is subject to options or conversion privileges which the beneficial owner had the right to exercise on or within sixty days after the date hereof is deemed outstanding for purposes of computing the percentage of Common Stock owned by such beneficial owner and for the Reporting Persons but is not deemed outstanding for the purpose of computing the percentage of outstanding Common Stock owned by any other beneficial owner.

7

(2)  CFI may be deemed to beneficially own all of the Shares because it is the owner of record of the CFI Shares and because it is controlled by the Siegel Trust and Mr. Siegel. See Item 3.

(3)  Mr. Siegel may be deemed to beneficially own all of the Shares because he is the sole trustee of the Siegel Trust, which owns all of the voting stock of CFI. See Item 3.

(4)  The Siegel Trust may be deemed to beneficially own all of the Shares because it owns all of the voting stock of CFI and because Mr. Siegel is the sole trustee and beneficiary of the Siegel Trust. See Item 3.

   (c)  Information concerning transactions in the Common Stock effected by the Reporting Persons during the past sixty (60) days is set forth in Schedule B hereto and is incorporated herein by reference. All of the put transactions listed on Schedule B were exchange traded options written through brokers. All of the sales of Common Stock listed on Schedule B were sold through brokers and effected on the New York Stock Exchange.

   (d)  Dividends on the shares of Common Stock reported herein will be paid to CFI and/or Mr. Siegel as the record owner. No other person is known to have the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of, such securities.

   (e)  Not applicable.

**Item 6.   Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer**

   The information set forth, or incorporated by reference, in Item 3 is hereby incorporated by this reference in this Item 6.

   Other than as described in this Statement, to the best knowledge of the Reporting Persons there are no contracts, arrangements, understandings or relationships among the Reporting Persons or the persons set forth on Schedule A, and between any such persons and any other person, with respect to any securities of the Issuer, including but not limited to, transfer and voting of any of the securities of the Issuer, joint ventures, loan or option arrangements, puts or calls, guarantees of profits, division of profits or loss, or the giving or withholding of proxies or a pledge or contingency the occurrence of which would give another person voting power or investment power over the securities of the Issuer.

**Item 7.   Material to be Filed as Exhibits**

Item 7 of the Schedule 13D is supplemented as follows:

Schedule A      Executive Officers and Directors of CFI

Schedule B      List of the transactions in Issuer Common Stock that were effected by the Reporting Persons during the past sixty days

Exhibit A       Joint Filing Agreement

8

Back to Contents

## SIGNATURE

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

Dated: July 20, 2006

CENTRAL FLORIDA INVESTMENTS, INC.

By: /s/ David A. Siegel
_____

Name: David A. Siegel
Title: President

DAVID A. SIEGEL REVOCABLE TRUST

By: /s/ David A. Siegel
_____

Name: David A. Siegel
Title: Trustee

/s/ David A. Siegel
_____

David A. Siegel

9

Back to Contents

**SCHEDULE A**

Executive Officers and Directors of Central Florida Investments, Inc.(1)

| Name | Citizenship | Present Principal Occupation or Employment | Business Address |
|------|-------------|-------------------------------------------|------------------|
| David A. Siegel | USA | President and sole director of Central Florida Investments, Inc. | 5601 Windhover Drive Orlando, FL 32819 |
| Thomas F. Dugan | USA | Treasurer of Central Florida Investments, Inc. | 5601 Windhover Drive Orlando, FL 32819 |

(1) Other than David A. Siegel, such persons disclaim beneficial ownership of any of the securities covered by this Statement.

Trustees of the David A. Siegel Revocable Trust

| Name | Citizenship | Present Principal Occupation or Employment | Business Address |
|------|-------------|-------------------------------------------|------------------|
| David A. Siegel | USA | Sole Trustee | 5601 Windhover Drive Orlando, FL 32819 |

10

**SCHEDULE B**

List of transactions in Issuer Common Stock that were effected by the Reporting Persons during the past sixty days

| Date of Transaction | Person Effecting Transaction | Type of Transaction | Expiration Date | Strike Price | Number of securities bought/(sold) | Price per share |
|---|---|---|---|---|---|---|
| 7/19/2006 | David Siegel | Sold Puts | Jul–06 | 12.5 | (758) | $ 0.417 |
| 7/19/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (4,309) | $ 0.568 |
| 7/18/2006 | David Siegel | Assigned Shares – Bought | Jul–06 | 12.5 | 7,300 | $ 12.500 |
| 7/18/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 300 | $ 12.500 |
| 7/18/2006 | David Siegel | Assigned Shares – Bought | Aug–06 | 12.5 | 2,500 | $ 12.500 |
| 7/18/2006 | David Siegel | Assigned Shares – Bought | Jul–06 | 12.5 | 300 | $ 12.500 |
| 7/18/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (1,858) | $ 0.957 |
| 7/18/2006 | David Siegel | Sold Puts | Jul–06 | 12.5 | (130) | $ 0.965 |
| 7/17/2006 | David Siegel | Assigned Shares – Bought | Jul–06 | 12.5 | 160,200 | $ 12.500 |
| 7/17/2006 | David Siegel | Assigned Shares – Bought | Aug–06 | 12.5 | 15,000 | $ 12.500 |
| 7/17/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (370) | $ 1.189 |
| 7/17/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 6,500 | $ 12.500 |
| 7/14/2006 | David Siegel | Assigned Shares – Bought | Jul–06 | 12.5 | 63,900 | $ 12.500 |
| 7/14/2006 | David Siegel | Assigned Shares – Bought | Aug–06 | 12.5 | 7,500 | $ 12.500 |
| 7/14/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (1,723) | $ 1.200 |
| 7/14/2006 | David Siegel | Sold Puts | Jul–06 | 12.5 | (1,677) | $ 1.200 |
| 7/14/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 101,900 | $ 12.500 |
| 7/13/2006 | David Siegel | Assigned Shares – Bought | Aug–06 | 12.5 | 4,000 | $ 12.500 |
| 7/13/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (1,184) | $ 1.143 |
| 7/13/2006 | David Siegel | Sold Puts | Jul–06 | 12.5 | (673) | $ 1.155 |
| 7/13/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 67,100 | $ 12.500 |
| 7/12/2006 | David Siegel | Assigned Shares – Bought | Aug–06 | 12.5 | 17,500 | $ 12.500 |
| 7/12/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (710) | $ 1.155 |

Back to Contents

| Date of Transaction | Person Effecting Transaction | Type of Transaction | Expiration Date | Strike Price | Number of securities bought/(sold) | Price per share |
|---|---|---|---|---|---|---|
| 7/12/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 52,500 | $ 12.500 |
| 7/11/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (2,590) | $ 1.143 |
| 7/11/2006 | David Siegel | Assigned Shares – Bought | Aug–06 | 12.5 | 10,000 | $ 12.500 |
| 7/11/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 201,100 | $ 12.500 |
| 7/10/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (305) | $ 1.150 |
| 7/10/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 248,400 | $ 12.500 |
| 7/7/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (380) | $ 1.153 |
| 7/6/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 4,000 | $ 12.500 |
| 7/6/2006 | Central Florida Investments, Inc. | sold shares | | | (5,900) | $ 11.397 |
| 7/5/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (10) | $ 1.100 |
| 7/5/2006 | Central Florida Investments, Inc. | sold shares | | | (14,000) | $ 11.368 |
| 7/3/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (234) | $ 1.100 |
| 7/3/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 20,000 | $ 12.500 |
| 7/3/2006 | Central Florida Investments, Inc. | sold shares | | | (22,900) | $ 11.432 |
| 7/3/2006 | Central Florida Investments, Inc. | sold shares | | | (200) | $ 11.450 |
| 6/30/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (150) | $ 1.100 |
| 6/30/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 500 | $ 12.500 |
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (1,500) | $ 11.430 |
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (1,250) | $ 11.440 |
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (5,000) | $ 11.400 |
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (2,000) | $ 11.450 |
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (500) | $ 11.420 |
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (1,500) | $ 11.410 |
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (1,500) | $ 11.440 |
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (250) | $ 11.410 |
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (1,000) | $ 11.460 |

Back to Contents

| Date of Transaction | Person Effecting Transaction | Type of Transaction | Expiration Date | Strike Price | Number of securities bought/(sold) | Price per share |
|---|---|---|---|---|---|---|
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (1,500) | $ 11.460 |
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (9,000) | $ 11.408 |
| 6/30/2006 | Central Florida Investments, Inc. | sold shares | | | (50,000) | $ 11.438 |
| 6/29/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (530) | $ 1.203 |
| 6/29/2006 | Central Florida Investments, Inc. | sold shares | | | (7,600) | $ 11.404 |
| 6/29/2006 | Central Florida Investments, Inc. | sold shares | | | (17,400) | $ 11.360 |
| 6/29/2006 | Central Florida Investments, Inc. | sold shares | | | (700) | $ 11.336 |
| 6/29/2006 | Central Florida Investments, Inc. | sold shares | | | (25,000) | $ 11.437 |
| 6/29/2006 | Central Florida Investments, Inc. | sold shares | | | (25,000) | $ 11.360 |
| 6/29/2006 | Central Florida Investments, Inc. | sold shares | | | (24,300) | $ 11.360 |
| 6/29/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 23,100 | $ 12.500 |
| 6/28/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (672) | $ 1.157 |
| 6/28/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 6,000 | $ 12.500 |
| 6/27/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 20,000 | $ 12.500 |
| 6/21/2006 | David Siegel | Assigned Shares – Bought | Aug–06 | 12.5 | 700 | $ 12.500 |
| 6/20/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (50) | $ 1.150 |
| 6/20/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 47,500 | $ 12.500 |
| 6/16/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Jun–06 | 12.5 | 135,900 | $ 12.500 |
| 6/14/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Jun–06 | 12.5 | 13,600 | $ 12.500 |
| 6/13/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (10) | $ 1.250 |
| 6/13/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Aug–06 | 12.5 | 2,900 | $ 12.500 |
| 6/7/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Jun–06 | 12.5 | 100 | $ 12.500 |
| 6/6/2006 | David Siegel | Sold Puts | Aug–06 | 12.5 | (200) | $ 1.000 |
| 6/6/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | Jun–06 | 12.5 | 400 | $ 12.500 |
| 5/30/2006 | Central Florida Investments, Inc. | Sold Puts | Aug–06 | 12.5 | (4,410) | $ 0.800 |
| 5/26/2006 | Central Florida Investments, Inc. | Sold Puts | Aug–06 | 12.5 | (400) | $ 0.830 |

Back to Contents

| Date of Transaction | Person Effecting Transaction | Type of Transaction | Expiration Date | Strike Price | Number of securities bought/(sold) | | Price per share |
|---|---|---|---|---|---|---|---|
| 5/25/2006 | Central Florida Investments, Inc. | Sold Puts | Aug–06 | 12.5 | (100) | $ | 0.850 |
| 5/25/2006 | Central Florida Investments, Inc. | Sold Puts | Aug–06 | 12.5 | (400) | $ | 12.500 |
| 5/24/2006 | Central Florida Investments, Inc. | Sold Puts | Aug–06 | 12.5 | (203) | $ | 0.950 |
| 5/23/2006 | Central Florida Investments, Inc. | Sold Puts | Aug–06 | 12.5 | (513) | $ | 0.950 |
| 5/22/2006 | Central Florida Investments, Inc. | Sold Puts | Aug–06 | 12.5 | (202) | $ | 1.005 |
| 5/19/2006 | Central Florida Investments, Inc. | Assigned Shares – Bought | May–06 | 12.5 | 1,254,000 | $ | 12.500 |

14

Back to Contents

EXHIBIT A

JOINT FILING AGREEMENT

   This will confirm the agreement among the undersigned that the Schedule 13D filed on or about this date and any amendments thereto with respect to beneficial ownership by the undersigned of shares of common stock, $0.01 par value per share, of Bluegreen Corporation is being filed on behalf of each of the undersigned in accordance with Rule 13d−1(k)(1) under the Securities Exchange Act of 1934, as amended. This agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Dated:     July 20, 2006

CENTRAL FLORIDA INVESTMENTS, INC.

By:   /s/ David A. Siegel
      ――――――――――――――――
      Name:   David A. Siegel
      Title:    President

DAVID A. SIEGEL REVOCABLE TRUST

By:   /s/ David A. Siegel
      ――――――――――――――――
      Name:   David A. Siegel
      Title:    Trustee

      /s/ David A. Siegel
      ――――――――――――――――
      David A. Siegel

15

# CIVIL COVER SHEET

06-80718

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM)

## I(a) PLAINTIFFS

BLUEGREEN CORPORATION,

## DEFENDANTS

DAVID A. SIEGEL, DAVID A. SIEGEL REVOCABLE TRUST, and CENTRAL FLORIDA INVESTMENTS.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Orlando
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND OF CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David C. Pollack, Esq.
Stearns Weaver Miller, et al
150 West Flagler Street, Suite 2200
(305) 789-3200

*Palm Beach/06 cv 80718/Hurley/Hopkin*

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:

**Palm Beach County**

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of
Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX ONLY)
(For Diversity Cases Only)
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

### 15 U.S.C. § 78m(d), misleading Schedule 13 D

**IVa.** _____ days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A. CONTRACT | A. TORTS | | B. FORFEITURE / PENALTY | A. BANKRUPTCY | A. OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | | B ☐ 450 Commerce / ICC Rates / etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | A. PROPERTY RIGHTS | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety / Health | ☐ 830 Patent | ☐ 810 Selective Service |
| B ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities / Commodities / Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | A. LABOR | B. SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | B ☐ 720 Labor / Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 730 Labor / Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC / DIWW (405g)) | ☐ 893 Environmental Matters |
| A. REAL PROPERTY | A. CIVIL RIGHTS | B. PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Under Equal Access to Justice | | | ☐ 900 Appeal of Fee Determination |
| A. FEDERAL TAX SUITS | | Habeas Corpus | | | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing / Accommodation | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions * A or B |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights * A or B | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Refiled
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE                    DOCKET NUMBER

DATE
July 27, 2006

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F   1-2

FOR OFFICE USE ONLY:   Receipt No. *44352*   Amount: *$350.00*

*07/27/06*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA **06 - 80718**

Miami Division

BLUEGREEN CORPORATION,                            CASE NO: _____

                        Plaintiff,

v.

DAVID A. SIEGEL, DAVID A. SIEGEL
REVOCABLE TRUST, and CENTRAL
FLORIDA INVESTMENTS,

                        Defendants.

_____/

## COMPLAINT
## JURY TRIAL DEMANDED

Plaintiff Bluegreen Corporation ("Bluegreen"), by its attorneys, as and for its complaint herein, with knowledge as to its own acts and otherwise upon information and belief, alleges as follows:

### NATURE OF THE ACTION

1.      Bluegreen brings this action to redress the illegal conduct of defendant David A. Siegel and entities that he controls in connection with their attempt to acquire a major stake in Bluegreen in violation of Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act") and the Florida Securities and Investor Protection Act, and to obtain a declaration that the actions taken by the Bluegreen Board of Directors in response to defendants' accumulation of Bluegreen shares are appropriate.



2.      On or about June 14, 2005, defendants began selling put options on Bluegreen common stock.  These put options entitled the buyers to sell Bluegreen shares to defendants at $12.50 per share.  Over the next thirteen months, defendants sold put options that, if and when they were exercised, would cause defendants to purchase 32.1% of Bluegreen's common shares.

3.      Over those thirteen months, however, defendants did not disclose their creeping accumulation of option positions.  Instead they waited until July 20, 2006 to reveal that, by virtue of third parties exercising the options defendants had sold, defendants had come to acquire 7.7% of Bluegreen's outstanding common shares.  Defendants further revealed in that July 20 disclosure (which they filed with the United States Securities and Exchange Commission on Schedule 13D) that additional outstanding option contracts, if exercised by the third parties who held them, would cause defendants to acquire an additional 24.4% of Bluegreen's outstanding stock.  A true and correct copy of defendants' Schedule 13 D is Exhibit 1 hereto.

4.      Defendants' campaign of accumulating option positions was part of a plan or scheme to evade the reporting requirements of Section 13(d) of the Exchange Act.  For that reason, by operation of law, defendants were deemed to be the beneficial owners of the common shares underlying the options they sold, and they were required to make public disclosures within ten days of their accumulation of put options covering 5% of Bluegreen's stock.  Defendants did not make those disclosures when they were due.  Instead they waited until the exercise of outstanding options caused their holdings of actual common shares to exceed the 5% level.  That failure to disclose their option-selling campaign had the effect of illegally concealing defendants' accumulation strategy and depriving Bluegreen shareholders of material information about defendants' plans and intentions.